In re DESERET MORTUARY CO.

OGDEN CHAMBER OF COMMERCE et al. v.
STATE SECURITIES COMMISSION et al.

No. 5031. Decided October 1, 1931. (3 Pac. [2d] 267.)

394

*Richards & Mitchell,* of Salt Lake City, and *J. H. DeVine* and *A. W. Agee,* both of Ogden, for appellants.

*Geo. P. Parker,* Atty. Gen., and *Clark, Richards, Bowen, Brown & Quinney,* of Salt Lake City, for respondents.

FOLLAND, J.

This is an appeal to review the action of the district court of Salt Lake county in dismissing an appeal taken by the Ogden Chamber of Commerce, a corporation, and the Utah Funeral Directors' Association, a voluntary association, from the registration by the State Securities Commission of certain securities of the Deseret Mortuary Company, a corporation.

The Deseret Mortuary Company filed its application with the State Securities Commission for registration of 5,000 of its service certificates. The Utah Funeral Directors' Association, which is a voluntary association of funeral directors, competitors of the applicant, and the Ogden Chamber of Commerce, appeared before the commission in opposition to the application and were by the commission allowed to file written protests. After a hearing and investigation, the commission made its order registering the certificates. The protestants thereupon gave notice of appeal to the district court of Salt Lake county from the action of the commission and filed bond on appeal. The record of the proceedings before the commission was certified by the commission to the district court. The Deseret Mortuary Company and the State Securities Commission thereupon moved the court to

dismiss the appeal upon the grounds that neither the said Utah Funeral Directors' Association nor the Ogden Chamber of Commerce has any legal interest in the order attempted by them to be appealed from, that neither is a party to the proceeding, or in any manner or wise affected either adversely or otherwise or at all by such order, that neither is by law authorized or empowered or permitted to conduct or take the appeal by them attempted to be conducted or taken, and that the court is without jurisdiction to entertain such appeal.

From a judgment of the district court dismissing the appeal, protestants have appealed to this court. But two questions are presented for our decision: (1) Was the order of registration by the commission a final order which under the statute is appealable; and (2) are protestants such "persons interested" as are entitled to take an appeal from a final order of the commission? Both of these questions must be answered in the negative. It is clear from a reading and analysis of the statute that the registration of securities by the commission is not such action by it as is appealable to the district court, that not being a final order. The only final order referred to in the act is the order revoking registration or the order denying registration of either securities or of dealers or salesmen. Laws Utah 1925, chap. 87 (superseding a similar act of 1919), created a State Securities Commission and defined its duties. In section 5 thereof it is provided that:

"No securities except of a class exempt under any of the provisions of Section 3 hereof or unless sold in any transaction exempt under any of the provisions of Section 4 hereof shall be sold within this State unless such securities shall have been registered by notification or by qualification as hereinafter defined."

Section 6 provides for registration by notification of the classes of securities therein mentioned. The filing of the required statement in the office of the commission and payment of fee provided "shall constitute the registration of such security." The section provides that registration may

be made at the instance of either the "issuer" of the security involved or of any registered dealer interested in the sale thereof. It further provides that if the commission shall be of the opinion that the statement upon which the registration has been secured is incorrect, incomplete, inadequate, or misleading, or that the sale of the registered security may work or tend to work a fraud, then the commission may make further specified requirements to enable it to determine whether the sale of the securities would be fraudulent or would result in fraud. Pending such investigation the commission may suspend the right to sell the security, in which event a hearing shall be accorded the parties interested. If, upon a hearing, the commission determines the sale of the security would be fraudulent or would result in fraud, or if no hearing is requested within a period of twenty days, the commission "shall enter a *final order* prohibiting sales of such security," and "appeals from such final order may be taken as hereinafter provided." If the commission should find that the security is entitled to registration and its sale will not be fraudulent nor result in fraud, it must then enter an order revoking the order of suspension and the security "shall be restored to its status as a security registered under this section." Section 7 provides for registration by qualification of the classes of securities therein mentioned, and upon examination of any application, if the commission shall "find that the sale of security referred to therein would not be fraudulent or would not work or tend to work a fraud upon the purchaser, or that the enterprise or business of the issuer is not based upon unsound business principles, then upon the payment of the fee provided in this section, it shall record the registration of such security in the register of securities." These securities so registered may then be sold by the issuer or any regular registered dealer who has notified the commission of his intention to do so. This registration, however, is subject to the further order of the commission either suspending or revoking registration. Section 9 provides that the commission may revoke the registration of any security by entering an order to

that effect, if it shall appear upon examination that the issue has not met the requirements of the section. A notice of such order must be given to the issuer of the security and every registered dealer who has given notice to the commission of an intention to sell the security. Section 19 provides for appeals and the procedure incident thereto and, so far as pertinent here, is as follows:

"An appeal may be taken by any person interested from any final order of the commission to the district court of the Third Judicial District of Utah by serving upon the commission within twenty days after the date of the entry of such order a written notice of such appeal stating the grounds upon which a reversal of such final order is sought; * * * If the order of the commission shall be reversed, said court shall by its mandate specifically direct said commission as to its further action in the matter, including the making and entering of any order or orders in connection therewith, and the conditions, limitations or restrictions to be therein contained, provided that the commission shall not thereby be barred from thereafter revoking or altering such order for any proper cause which may thereafter accrue or be discovered. If said order shall be affirmed, said appellant shall not be barred after thirty days from filing a new application provided such application is not otherwise barred or limited. Such appeal shall not in anywise suspend the operation of the order appealed from during the pendency of such appeal unless upon proper order of the court."

An appeal is allowed from any *final order* of the commission. No reference is made to an appeal from the act or order of registering a security or from any other order except a final order. The only final order referred to in the act is an order refusing or canceling registration of either a security, a dealer, or a salesman, and indeed such an order is the only one which in its nature is final or which is such an order as touches the right of any person in his person or property. Such an order is one that might be reviewed by the court by one of the prerogative writs had the Legislature not seen fit to have provided for an appeal. The act of registration is by the statute held subject to "further order" of suspension or revocation, and the order of suspension of registration is clearly an order of temporary or

interlocutory effect and by its nature not final. The language of section 19 is wholly consistent with the construction we have thus given to the words "final order," and indeed indicates that the final order from which an appeal may be taken is the final order of revocation or refusal of registration. The only provision made for service of notice of appeal is a service of such notice upon the commission. This is consistent only with the view that the applicant is the appellant and the commission, as the agency of the state set up for the purpose of safeguarding the interests of the public, is the adverse party to such appeal. If any member of the public who might have been a protestant against registration were expected to be the appellant, then provision undoubtedly would have been made for a service of notice of appeal on the adverse party and a filing merely of the notice with the commission. The language with respect to the kind of an order the district court may make directing the "conditions, limitations or restrictions" to be contained in the further order of the commission, and also "that the commission shall not thereby be barred from thereafter revoking or altering such order for any proper cause which may thereafter accrue or be discovered," is consistent only with the view that the applicant is the appellant and the only one who may be an appellant. The final language of section 19 even more conclusively bears out this construction by definitely identifying the applicant as the appellant, "if said order [the order appealed from] shall be affirmed, said appellant shall not be barred after thirty days from filing a new application provided such application is not otherwise barred or limited." This particular provision could not possibly apply to any situation other than one where the commission has denied or revoked registration and upon appeal the court has affirmed such order. The intent of the statute is that the commission alone constitutes the agency of the state to stand between he public and those who issue or sell securities of questionable standing or worth. Section 17 of the act provides that if in the issuance or sale of any securities it shall be made to appear

that any person "employs, or is about to employ any device, scheme or artifice to defraud or for obtaining money or property by means of any false pretense, representation or promise," the commission may "bring an action in the name and on behalf of the State of Utah against such person" to enjoin such questionable practice. Thus it is made clear that the commission is created to afford such protection to the public as is contemplated by the act, and may itself be a party to an action to enforce the provisions of the act. Any person who has a grievance on account of sales of securities may apply to the commission for the exercise of its powers, and the commission may proceed either by refusing or revoking registration or may bring an action in the name of the state to prevent fraud in the sale of securities. So also when the commission denies the right of registration to any person whether as an issuer of securities or the dealer or salesman of such, it is entitled to have served upon it the notice of appeal so that it may defend its action as against any person feeling aggrieved because of being denied the right to deal in or sell his own property or to follow his occupation as a dealer or salesman.

Unless the act either expressly or by necessary implication clothes these appellants or other members of the public with the the right of interposition as appellants in behalf of the public interests, then they have no standing here, and the trial court was right in dismissing the appeal. The statute (section 19) provides,

"An appeal may be taken by *any person interested* from any final order of the Commission."

The words "any person interested" are not defined in the act, but the clear implication from the language of the act is that the words refer to persons who are interested as issuers, dealers, or salesmen of securities. In section 6, it is provided that the commission may enter an order of suspension of registration of any of the securities covered in that section, and states that in the event of an entry of such an order the commission shall "upon request give prompt

hearing to the parties interested." A reading of the context leaves no doubt but that "parties interested" refers to the issuer or any registered dealer. Section 9 gives power to the commission to revoke the registration of any security and provides for notice of such order to be given to the issuer and every registered dealer who shall have notified the commission of an intention to sell such security. These are the only interested persons recognized in the act. We find nothing therein which indicates that a person or group of persons having no such an interest in the securities may be permitted to become parties to the application either in opposition or in support thereof or to exercise any control whatsoever over the proceedings either before the commission or on appeal. It is claimed by appellants that they are parties to the proceedings by reason of the commission permitting them to file protests to the application for registration, and that after the commission granted the application and made an order authorizing registration of the securities they were such "persons interested" as by the act were allowed to prosecute an appeal to the district court. The commission is not a court, although exercising quasi-judicial functions, but is an administrative board exercising on behalf of the state the regulatory powers authorized by the act. A hearing is not a "trial" as that word is ordinarily understood, but is an investigation and is so styled in the act. Because the commission in the investigation of the application by the Deseret Mortuary Company permitted appellants to protest and furnish such facts as they claimed to have does not make them parties to the proceeding nor give them any control over the cause either before the commission or in the courts. They are in no sense parties to the cause of action.

The rule applicable to persons authorized to appeal in the ordinary course of law is stated in R. C. L. as follows:

"A cardinal principle, which applies alike to every person desiring to appeal whether a party to the record or not, is that he must have an interest in the subject-matter of the litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal

have an interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment." 52 R. C. L. 52.

"The damage or grievance which entitles a party to a writ of error or an appeal, within this rule must be a direct and positive one, effected by the judgment concluding and acting upon his rights; and such damage must be by the record, and not in consequence of it. Persons aggrieved, in this sense, are not those who may happen to entertain desires on the subject, but only those who have rights which may be enforced at law, and whose pecuniary interests might be established in whole or in part by the decree; in other words, the mere fact that a person is hurt in his feelings, wounded in his affections, or subjected to inconvenience, annoyance, discomfort, or even expense by a decree, does not entitle him to appeal from it, so long as he is not thereby concluded from asserting or defending his claims of personal or property rights in any proper court." 52 R. C. L. 53.

We have not had our attention called nor have we found any judicial construction of the phrase "persons interested" as used in any of the so-called "blue sky legislation. But there are cases where the phrase "persons aggrieved" has been construed when used in acts providing for appeals from other boards or commissions. In *Standard Oil Company of New York* v. *Board of Purification of Waters*, 43 R. I. 336, 111 A. 887, 888, construing a statute providing that "any person aggrieved" might appeal from an order of the board, the court adopts the following definition of the "person aggrieved":

"That a party is aggrieved by the judgment or decree where it operates on his rights of property or bears directly upon his interest. * * * The word 'aggrieved' refers to a substantial grievance, a denial of some personal property right or the imposition upon a party of a burden or obligation."

In *Thornton* v. *Town of Charleston*, 109 Miss. 255, 68 So. 169, an action involving severance of area from a municipality, it was held that property owners in the municipality, but owning no property in the severed area, are not so interested as to be entitled to appeal; that the phrase "person aggrieved," as used in the statute providing that such per-

sons may appeal, means "person interested"; and that no person has the right to appeal unless he have some personal or property right in the proceedings.

The phrase "persons interested," within the meaning of the statute allowing appeals from decrees of the probate court, has been construed to mean one who has some legal right or is under some legal liability that may be enlarged or diminished by the decree, In re *Clark's Estate,* 79 Vt. 62, 64 A. 231, 118 Am. St. Rep. 938, and also that a person interested in sustaining or defeating a will is one who has a pecuniary interest to protect. An interest resting on sentiment or sympathy or any basis other than loss of money or its equivalent is not sufficient. In re *Thompson's Will,* 178 N. C. 540, 101 S. E. 107.

The members of the Funeral Directors' Association may have an interest as competitors to keep the applicant out of the field or to restrict its activities, and the Chamber of Commerce may have an interest such as any member of the public has to desire that no fictitious or unworthy securities are placed before the public, but that is not such an interest as is recognized by the law as giving such organizations a right to control a case based upon the application for the registration of securities. They have discharged their duty to themselves and the public when they have protested to the commission and offered to it such information as they may have bearing upon the matter under investigation. The phrase "interested parties," as used in the statute, undoubtedly refers to persons who are touched in their property or person by the order complained of. The appellants here have no such interest in the subject-matter of this action.

The judgment of the district court of Salt Lake county is affirmed, with costs to the respondents.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.